**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHELLE DEANNA**
**LAFLEUR,**

                         **Plaintiff,**                    **5:14-cv-1120**
                                                           **(GLS)**

              **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                         **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Law Offices of Steven R. Dolson      STEVEN R. DOLSON, ESQ.
126 North Salina Street, Suite 3B
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN      FERGUS J. KAISER
United States Attorney         Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Michelle Deanna Lafleur challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Lafleur's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On December 4, 2009, Lafleur filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since March 1, 2006.  (Tr.[1] at 152, 153, 279-80, 281-84.)  After her applications were denied, (*id.* at 181-86), Lafleur requested a hearing before an Administrative Law Judge (ALJ), which was held on June 1, 2011, (*id.* at 106-51).  On June 10, 2011, an ALJ issued an unfavorable decision denying the requested benefits.  (*Id.* at 155-73.)  That determination was remanded by the Appeals Council for consideration by a different ALJ

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (Dkt. No. 10.)

2

(hereinafter "the ALJ").  (*Id.* at 174-78.)  Following a second hearing, which took place on January 25, 2013, the ALJ issued another unfavorable decision, (*id.* at 11-29, 80-105), which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review,  (*id.* at 1-6).

Lafleur commenced the present action by filing her complaint on September 11, 2014 wherein she sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 11, 13.)

### III.  Contentions

Lafleur contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 11 at 3-15.) Specifically, Lafleur argues that the ALJ committed error in failing to: (1) follow the treating physician rule; (2) properly assess her credibility; and (3) appropriately consider her neuropathy in rendering a residual functional capacity (RFC) assessment.  (*Id.*)  The Commissioner counters that the appropriate legal standards were used and the findings are supported by

substantial evidence.  (Dkt. No. 13 at 7-15.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (Dkt. No. 11 at 1-2; Dkt. No. 13 at 1.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

## A.    Weighing Opinion Evidence[3]

_____

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.  As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

[3] Within her argument that a treating physician's opinion was improperly weighed by the ALJ, Lafleur contends that the ALJ had an obligation to develop the record where his assessment of limited weight was based upon the absence of clinical or objective findings in support of the opinion.  (Dkt. No. 11 at 7.)  What Lafleur overlooks is that the ALJ's duty is not limitless.  *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010).  Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may

First, Lafleur argues that the ALJ committed error by failing to assign the opinion of treating cardiologist, Robert Carhart, Jr., controlling weight. (Dkt. No. 11 at 3-8.)  The court disagrees.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 404.1527(c).  The ALJ must provide "'good reasons' for the weight given

---

make his determination based upon that evidence.  *See* 20 C.F.R. § 404.1520b(a).  Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information.  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  In the absence of any obvious gaps in the record, the ALJ was under no duty to further develop the medical record here.

to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407

(2d Cir. 2011) (citations omitted).  "Nevertheless, where the evidence of

record permits [the court] to glean the rationale of an ALJ's decision," it is

not necessary that the ALJ "have mentioned every item of testimony

presented to him or have explained why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability."  *Id*.

(internal quotation marks and citations omitted).

 Here, despite Lafleur's treatment history with Dr. Carhart, which the

ALJ explicitly considered before giving his opinion "minimal weight," (Tr. at

21), the ALJ was justified in departing from the treating physician rule.

While Lafleur protests the authority upon which the ALJ relied in

diminishing the value of the RFC questionnaire completed by Dr. Carhart,

(Dkt. No. 11 at 6), her arguments miss the point.  The ALJ appropriately

noted, while clearly mindful of the lengthy treatment history between

Lafleur and Dr. Carhart, that check-the-box-type questionnaires are of

limited value in the disability analysis, particularly where the medical

records related to Dr. Carhart's treatment did not objectively support his

restrictive opinions.  (Tr. at 21.)[4]

In addition, as Lafleur admits and the ALJ realized, Dr. Carhart's restrictive opinions regarding Lafleur's physical impairments were inconsistent with other substantial evidence[5] of record, namely the opinion of consultative examiner Kalyani Ganesh.  (Id.; Dkt. No. 11 at 7.)  Dr. Ganesh, whose opinion was afforded "significant weight," was far less restrictive than Dr. Carhart's and appropriately supports a finding that Lafleur retains the ability to perform sedentary work.  (Tr. at 21.)  In particular, Dr. Ganesh opined that Lafleur had no limitations "sitting, standing, walking, or [using her] upper extremities," but that "she should avoid heavy lifting and carrying, pushing, and pulling secondary to coronary artery disease."  (Id. at 475.)  These findings are buttressed by a

---

[4] Lafleur's argument that the ALJ's reliance on a check-the-box-type assessment from medical consultant E. Kamin somehow shows an inconsistent application of the rule of law applied by the ALJ, (Dkt. No. 11 at 8), is also misguided.  First, Dr. Kamin's assessment related to Lafleur's mental RFC, (Tr. at 462-64), which Lafleur does not challenge.  Second, as noted above, check-the-box assessments are not entitled to little wight per se.  Those kinds of assessments are only as good as the objective medical data that underlies them.  Finally, a medical consultant, like Dr. Kamin, can only review the medical record and, from it, render an opinion about the claimant's abilities.  Unlike a treating physician, who is equipped with knowledge of the claimant from his or her treatment and examination of that individual, a medical consultant would not have his or her own treatment records to rely upon in forming an opinion about the claimant's limitations.

[5] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

benign physical examination in which Lafleur exhibited a normal gait, the ability to walk on her heels and toes without difficulty, a full squat, and normal stance, and used no assistive devices or had any difficulty in rising from a chair.  (*Id.* at 473.)

Dr. Carhart's opinion is also contradicted by the findings of medical consultant N. Natale.  (*Id.* at 456-61.)  Natale's opinions, while not entirely aligned with those of Dr. Ganesh, nonetheless support the RFC determination of sedentary work.  Natale opined that Lafleur could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for a total of six hours in an eight-hour work day, and had unlimited ability to push and/or pull, no postural limitations, no manipulative limitations, and no visual limitations.  (*Id.* at 457-58.)  Dr. Ganesh and Natale, both of whom "are deemed to be qualified experts in the field of social security disability," provided substantial evidence for the ALJ's determination.  *See Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).

Because Dr. Carhart's opinion was inconsistent with other evidence of record, the ALJ was not required to afford it controlling weight.  20 C.F.R. § 404.1527(c)(2).  The court is also satisfied that the reasons

provided by the ALJ for the weight he gave Dr. Carhart's opinion reflect a faithful application of the regulatory factors.  *See id.* § 404.1527(c).  For all of these reasons, remand is not warranted.

## B.    <u>Credibility</u>

Next, Lafleur argues the ALJ applied the wrong legal standard in assessing her credibility, which had the collateral effect of tainting the RFC determination.  (Dkt. No. 11 at 8-11.)  In essence, Lafleur objects to the bases for discrediting her cited by the ALJ, namely, her failure to follow through with mental health treatment, failure to cease smoking, and her activities of daily living.  (*Id.* at 9-11.)  Remand is not required.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the

9

weight given to the [claimant's] statements." SSR 96–7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

This ALJ's finding here is based on the appropriate legal standards and is supported by substantial evidence. First, on the issue of whether the ALJ committed legal error, he specifically cited 20 C.F.R. § 404.1529 and SSR 96-7p, the governing regulation and Social Security Ruling, and acknowledged his consideration of the entire record. (Tr. at 19.) Given the clear application of the appropriate § 404.1529 factors, as detailed and specifically recited in the ALJ's determination, (*id.* at 19-22), no legal error was committed. *See Dombrowski v. Astrue*, No. 5:12-cv-638, 2013 WL 528456, at *4 (N.D.N.Y. Feb. 11, 2013).

The credibility determination is also supported by substantial

10

evidence.  The ALJ determined that Lafleur's "medically determinable

impairment could reasonably be expected to cause the alleged symptoms,"

which included complaints of "breathing difficulty [and] problems holding

things and shooting pain in her hands," but that her "statements concerning

the intensity, persistence and limiting effects of [her] symptoms [we]re not

credible because they are unsupported by medical and other evidence,

competent medical opinion, and testimony."  (Tr. at 20.)  As support for his

credibility finding, the ALJ noted the lack of objective evidence that

supports the severity alleged by Lafleur.  (*Id.*)  The ALJ detailed the benign

medical record that demonstrated, among other things, "no acute distress

with a normal gait and stance."  (*Id.* at 20, 473, 474.)  Other cited medical

records noted well-controlled asthma, improved lung functioning, and

stable cardiac condition.  (*Id.* at 508, 547, 556, 557, 608, 724.)  In addition

to the medical evidence of record, the ALJ provided other reasons for his

credibility finding.  Among those reasons were Lafleur's activities of daily

living, including, but not limited to, household chores and socializing, the

fact that she stopped working, in part, to care for her ill mother, and, finally,

because of her inconsistent mental health treatment.  (*Id.* at 20, 472-73.)

    As for Lafleur's focus on the ALJ's reliance on inconsistent mental

health treatment, (Dkt. No. 11 at 9-10), even assuming that the argument is apt, it overlooks the totality of the ALJ's analysis.  And, finally, Lafleur's complaint that "[t]he ALJ discredited [her] for her failure to quit smoking, although she suffers from COPD," (*id.* at 10), is entirely off-base.  The only mention of Lafleur's failure to cease smoking is not made in connection with the ALJ's credibility finding.  (Tr. at 21.)  It, instead, is mentioned for the limited purpose of considering whether Lafleur's physical RFC finding should have included additional restrictions beyond "avoid[ance of] concentrated exposure to fumes, dust, gases, and extreme temperatures." (*Id.* at 19, 21.)  As such, Lafleur is simply mistaken that the ALJ's credibility determination was impacted by her failure to give up smoking.

For all of these reasons, the Commissioner's decision with respect to Lafleur's credibility is affirmed.

## C.   RFC Determination[6]

---

[6] It is noteworthy that Lafleur argues that it was error for the ALJ to fail to find her neuropathy a severe impairment. (Dkt. No. 11 at 12.)  She acknowledges, however, that, because other impairments were deemed to be severe at step two, the harm to her comes from the ALJ's failure to consider the limitations from her neuropathy at step four.  (*Id.*)  As such, and despite the Commissioner's failure to respond to the decisive issue, (Dkt. No. 13 at 13-14), the court addresses only the argument as it relates to the RFC finding.

Lafleur also contends, without any meaningful detail or explanation, that, "given the numerous non-exertional limitations imposed on [her], the ALJ should have called on a vocational expert" (VE).  (Dkt. No. 11 at 15.)  The record is clear that the ALJ appreciated and considered whether VE testimony was necessary, and concluded it was not.  (Tr. at 23.)  In the absence of a particularized argument from Lafleur, the court comments only that ALJ's mental

Finally, Lafleur contends that the physical RFC determination is flawed because it fails to properly account for her neuropathy.  (Dkt. No. 11 at 12-15.)  The court disagrees that remand is required.

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Lafleur argues that the ALJ failed to account for limitations from diabetic neuropathy in her hands and feet.  (Dkt. No. 11 at 13.)  In support, Lafleur contends that Dr. Carhart opined that she had functional limitations as a result of neuropathy, and that other medical evidence supports the notion that she suffers limitations, yet the ALJ failed to take

_____

RFC determination, which has not been attacked by Lafleur, supports the ALJ's conclusion that Lafleur's "nonexertional impairments 'did not significantly limit the range of work permitted by h[er] exertional limitations,'" such that reliance on the Medical-Vocational Guidelines was appropriate.  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).

13

those limitations into account in rendering an RFC.  (*Id.*; Tr. at 500, 507, 511, 513, 514, 632.)  Because the ALJ's determination that "there [wa]s no evidence to support any functional restrictions that ha[d] been imposed based on" Lafleur's neuropathy is supported by substantial evidence, it was not error for the ALJ to find no such limitations in determining that Lafleur retained the ability to perform sedentary work.  (Tr. at 17.)

It is worth noting that Dr. Carhart's opinion was discounted, as discussed above, *see supra* Part VI.A, but even his restrictive opinion regarding Lafleur's use of her hand, fingers, and arms was only arguably related to diabetic neuropathy.  Indeed, neuropathy is mentioned only in response to a question designed to determine whether the claimant was able to tolerate work stress.  (Tr. at 630.)  In any event, the ALJ's conclusion that the medical record is inconsistent with Dr. Carhart's opinion is supported by substantial evidence.  While Lafleur's neuropathy is noted a handful of times in the medical record (*id.* at 500, 513, 514, 606), and some symptoms generally associated with neuropathy, including decreased sensation, are recorded,[7] (*id.* at 511, 514), there is no evidence

---

[7] "Diabetic neuropathy is a type of nerve damage that can occur if you have diabetes," and "[d]epending on the affected nerves, symptoms of diabetic neuropathy can range from pain and numbness in your extremities to problems with your digestive system, urinary tract,

that the condition caused any functional limitations.  In fact, Dr. Ganesh, who acknowledged Lafleur's complaints related to neuropathy and noted that Lafleur "states decreased pinprick sensation in the legs," which may be a symptom of the same, (*id.* at 472, 474), also noted that "[h]and and finger dexterity [were] intact" and that grip strength was 5/5 bilaterally, (*id.* at 475).  Despite her knowledge of Lafleur's neuropathy and corresponding complaints of "tingling, numbness, and cramping in her feet and her hands," Dr. Ganesh opined that Lafleur has no limitations in "sitting, standing, walking, or the use of [her] upper extremities."  (*Id.* at 472, 475.)

Bearing the foregoing in mind, the RFC finding, which is free from legal error and supported by substantial evidence, will not be disturbed.

## D.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

---

blood vessels and heart."  Mayo Clinic, Diabetic Neuropathy, http://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/basics/definition/con-20033 336 (last visited Feb. 11, 2016).

Lafleur's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

      **ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 23, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge

16